**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| FIDEL CALVILLO, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 25 C 11556 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| COUNTY OF COOK, a municipal | ) | |
| corporation SHERIFF THOMAS DART, | ) | |
| in his official capacity as Sheriff of Cook | ) | |
| County, DEPUTY SHADONNA JONES, | ) | |
| a Cook County Sheriff's Deputy, COOK | ) | |
| COUNTY DEPARTMENT OF | ) | |
| CORRECTIONS, by and through COOK | ) | |
| COUNTY and THE COOK COUNTY | ) | |
| SHERIFF's OFFICE, by and through | ) | |
| COOK COUNTY and UNKOWN | ) | |
| DEPUTY COOK COUNTY SHERRIFS | ) | |
| | ) | |
| *Defendants*, | ) | |
| | ) | |

## <u>MEMORANDUM OPINION & ORDER</u>

Plaintiff Fidel Calvillo filed a complaint under 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments along with a pendant state law claim for negligence. (Dkt. 1). Defendant Sheriff Dart moves to dismiss with prejudice, contending that Calvillo fails to plausibly allege a *Monell* claim and that his state-law claim is time-barred. (Dkt. 7). The Court grants and denies Defendant's motion in part.

## <u>BACKGROUND</u>

Calvillo was a drug addict receiving treatment for his addiction while a pretrial detainee in Cook County Jail. (Dkt. 1, ¶¶ 12, 15). Around August 8, 2024, he received drugs that were smuggled into the jail by Defendant Jones, who was paid by an inmate to smuggle them into the jail. (*Id.*, ¶¶ 17-21). After Calvillo received the drugs, he ingested them, overdosed, and was

1

discovered unconscious in his cell on August 8, 2024—hours or days after overdosing. (*Id.*, ¶ 29). Calvillo spent six months in Mount Sinai Hospital after this. (*Id.*, ¶ 31). The overdose caused injuries including paralysis and neurological damage. (*Id.*, ¶ 33).

Calvillo alleges that this was caused by the widespread drug smuggling problem in Cook County Jail. (*Id.*, ¶¶ 17, 19-32, 41-43, 47, 50). Defendants "were well aware of the fact that inmates and [Unknown] Cook County Deputy Sheriffs smuggled drugs into the Cook County Department of Corrections and provided them to the inmates," but Defendants "failed to take reasonable measures to prevent their own employees from smuggling drugs into the jail," Calvillo alleges. (*Id.*, ¶ 22) (capitalization removed). This widespread practice is demonstrated, according to Calvillo, by the fact that, since 2012, there have been fourteen overdose deaths in Cook County Jail. (*Id.*, ¶¶ 24-25). He also points to testimony from a prior case where a witnesses testified to this widespread problem and that "officer[s] [were] not required to pass through the machine that can scan their body cavities for drugs prior to beginning their shift." (*Id.*, ¶ 23).

Calvillo also alleges that his injuries were exacerbated—and his medical emergency went unnoticed—because officers in Cook County Jail use "cross watching." (*Id.*, ¶¶ 40, 54-59). This is "a practice or policy which permits Deputy Cook County Sheriffs assigned to various tiers of the jail to watch more than one tier at a time[.]" (*Id.*, ¶ 55) (capitalization removed). Calvillo claims that this practice violates "the Cook County Jail's . . . internal rules and regulations, OSHA, and the collective bargaining agreement." (*Id.*) He also alleges that this practice violates Illinois Administrative Code Title 20, Section 701.130 because "[u]nder Illinois State Law, detainees are required to be monitored at least every thirty (30) minutes." (*Id.*, ¶ 38). Because Defendants used this practice, Calvillo alleges that "his medical emergency went unnoticed for hours, if not days,"

as there was "insufficient staff to monitor detainees and conduct wellness checks in a timely manner." (*Id.*, ¶ 40) (capitalization and hyphens removed).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotes omitted). "This means that the complaint must offer factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 482 (7th Cir. 2025) (cleaned up). The Court will accept "well-pleaded facts in the complaint as true and draw reasonable inferences in plaintiffs' favor—but [will] not presume the truth of legal conclusions and conclusory allegations." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024). For these reasons, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (quoting *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021)).

## DISCUSSION

### I.     The Parties

Calvillo sued state entities and officials in their official capacity. (Dkt. 1 at 1). "Suits against state officials in their official capacity" are "treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Calvillo sued: (1) County of Cook, (2) Cook County Department of Corrections, (3) Cook County Sheriff's Office, (4) Sheriff Dart, (5) Deputy Jones,[1] and (6) Unknown Deputy Cook County Sheriffs. (Dkt. 1, ¶¶ 6-11). The Court dismisses all Defendants except Defendant Dart.

---

[1] It is unclear whether Calvillo sued Defendant Jones in her personal or official capacity.

The Court dismisses Defendant Cook County. In Illinois, "the Cook County Sheriff's Office bears the responsibility to appoint and hire deputies and act as custodian of the county courthouse. . . . As a result, no liability can attach to Cook County . . . under *Monell*" because Cook County "lacks the authority to establish and implement any policies regarding the training or performance" of employees for the "Cook County Sheriff's Office." *Bergquist v. Milazzo*, 2020 WL 757902, at *5 (N.D. Ill. Feb. 14, 2020) (citing *Askew v. Sheriff of Cook Cty., Ill.*, 568 F.3d 632, 636 (7th Cir. 2009)); *Ryan v. Cty. of DuPage*, 45 F.3d 1090, 1092 (7th Cir. 1995); *Conwell v. Cook Cty.*, 2015 WL 4973086, at *4 (N.D. Ill. Aug. 18, 2015); *Fairley v. Andrews*, 300 F. Supp. 2d 660, 670 (N.D. Ill. 2004). The Court dismisses Defendant Cook County Department of Corrections as it is not a proper Defendant. It is "simply a department within the Cook County Sheriff's office and does not have a separate legal existence. As such it is not a suable entity." *Lee v. Penison*, 1995 WL 669106, at *2 (N.D. Ill. Nov. 7, 1995) (citing *Mayes v. Elrod,* 470 F. Supp. 1188, 1192 (N.D. Ill. 1979)); *Castillo v. Cook Cnty. Mail Room Dep't*, 990 F.2d 304, 307 (7th Cir. 1993) ("The Cook County Department of Corrections is not a suable entity."). The Court dismisses Defendant Cook County Sheriff's Office as "a redundant party" because a suit against Cook County Sheriff Dart "in his official capacity . . . is for all practical purposes, a suit against the 'Cook County Sheriff's Office.'" *Torres v. Dart*, 2015 WL 4379890, at *2 (N.D. Ill. July 16, 2015) (quoting *Carver v. Sheriff of La Salle County,* 203 Ill.2d 497, 508-16, (2003)); *Askew*, 568 F.3d at 636. The Court is not dismissing Defendant Dart, however. *Id.*

Lastly, the Court dismisses Defendant Jones and the "[Unknown] Deputy Cook County Sheriffs." (Dkt. 1, ¶¶ 10-11). Calvillo filed his complaint on September 24, 2025. (*Id.*) Since then, he has failed to serve or identify these Defendants. Federal Rule of Civil Procedure 4(m) requires a plaintiff to serve a defendant "within 90 days after the complaint is filed." *Id.* This "Rule applies

to unknown defendants." *Lacy v. Cook Cnty.*, 2023 WL 6388132, at *2 (N.D. Ill. Sept. 28, 2023); *Redd v. Dougherty*, 578 F. Supp. 2d 1042, 1049 (N.D. Ill. 2008) ("Although there is no prohibition on filing suit against unknown defendants, 'John Doe defendants must be identified and served within [90] days of the commencement of the action against them.'") (quoting *Aviles v. Vill. of Bedford Park*, 160 F.R.D. 565, 567 (N.D. Ill. 1995)). It has been well over 90 days and Calvillo has not served Defendant Jones or the Unknown Defendants. He has provided no reason for the delay; he has not amended his complaint; nor has he provided a reason why the Unknown Defendants remain unidentified. He has failed to show good cause. The Court "must dismiss the action without prejudice against [these] defendant[s]." Fed. R. Civ. P. 4(m).[2] The Court therefore dismisses all Defendants—except Dart—under Rule 4(m) for failure of service. Fed. R. Civ. P. 4(m); *Morrow*, 653 F. App'x at 482; *Slabon*, 2023 WL 3451274, at *2.

## II.    *Monell*

It is difficult to parse which allegations refer to which Defendants and under which claims in Calvillo's shotgun pleading. The Court interprets Calvillo's complaint as directing all Counts against Dart. (Dkt. 1, ¶¶ 35, 59, 62); (Dkt. 9 at 2) (identifying all "Defendants'" and "Defendant Dart" for each count).[3]

Calvillo sued Dart in his official capacity under 42 U.S.C. § 1983 for violating the Eighth and Fourteenth Amendments. (*Id.*, ¶¶ 34-51). Calvillo was a pretrial detainee at the time of the

---

[2] Calvillo failed to serve any Defendant except Defendant Dart. (Dkt. 5) (waiver of service only for Dart). This stands as another basis to dismiss each Defendant (except Dart).

[3] Calvillo's counts contain varying claims embedded within them; while this bundling blurs the boundaries between the claims—and encroaches on impermissible shotgun pleading—the Court can untangle them for purposes of this motion to dismiss and construes the facts in a light most favorable to Calvillo. *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992); *Diehl v. Landmark Recovery of Carmel LLC*, 743 F. Supp. 3d 1015, 1019 (N.D. Ind. 2024); *Cielak*, 112 F.4th at 475.

alleged violations, so the Fourteenth, not the Eighth, Amendment applies. *Kemp v. Fulton Cnty.*, 27 F.4th 491, 495 (7th Cir. 2022). "For a *Monell* claim to survive a motion to dismiss, [Calvillo] must plead facts that plausibly suggest that: (1) []he was deprived of a constitutional right; (2) the deprivation can be traced to some municipal action (i.e., a policy or custom), such that the challenged conduct is properly attributable to the municipality itself; (3) the policy or custom demonstrates municipal fault, i.e., deliberate indifference; and (4) the municipal action was the moving force behind the federal-rights violation." *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 524 (7th Cir. 2023) (cleaned up). "All requirements must be scrupulously applied to avoid a claim for municipal liability backsliding into an impermissible claim for vicarious liability." *Id.* (quotes omitted).

There are "three types of entity action that can support *Monell* liability under § 1983: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Sanders v. Moss*, 153 F.4th 557, 570 (7th Cir. 2025) (quotes omitted). "Moreover, inaction can give rise to liability under *Monell* if it reflects a conscious decision not to take action where necessary to remedy a potentially dangerous practice." *Id.* (quotes omitted).

The parties primarily dispute prong two: whether Calvillo sufficiently alleged a widespread practice. Dart challenges Calvillo's allegations contending that he failed to sufficiently plead any of the three types of entity action that can support *Monell* liability under § 1983; Dart also asserts that no entity action caused Calvillo's alleged constitutional injuries. (Dkt. 7 at 6-12). Calvillo alleges that there were two widespread practices: drug smuggling (Dkt 1, ¶¶ 17, 19-32, 41-43, 47, 50) and "cross-watching." (*Id.*, ¶¶ 34-59); (*see also* Dkt. 9 at 2, 6-11).

6

### a. Widespread practice

Calvillo alleges a widespread practice of drug smuggling as the force setting in motion the series of events that eventually caused his overdose and injuries. *See supra* at 1-2. He points to Deputy Jones' conduct—smuggling drugs into the jail—using drug-soaked paper[4] (Dkt. 1, ¶ 19) and the increasing number of drug overdose deaths. (*Id.*, ¶¶ 24-25). Calvillo alleges that "[w]hile a detainee in Division 9 of the Cook County Jail," he "ingested some of the drugs smuggled into the jail in drug-soaked paper by" Deputy Jones "and suffered a drug overdose." (*Id.*, ¶ 19). He states that this conduct has been ongoing and on the rise: since 2012 there have been fourteen overdoses deaths. (*Id.*, ¶¶ 24-25).[5] He further alleges that "[i]n 2023 alone, at least eight . . . detainees died of a drug overdose at the Cook County Department Of Corrections." (*Id.*, ¶ 25) (capitalization removed). He substantiates these allegations with testimony from a prior case, *Scott v. Cook County Department of Correction, et. al.*, 19 C 5441, where a witness testified that, "'during his prior incarcerations at Cook County Jail it was easy to obtain drugs from other inmates who smuggled in drugs and that the officers themselves smuggled in drugs and provided them to the inmates.'" (*Id.*, ¶ 23). From this same case, Calvillo alleges that "Investigator Barker" testified that "officers are not required to pass through the machine that can scan their body cavities for drugs prior to beginning their shift." (*Id.*) Calvillo ties all this together by alleging that Dart implemented inadequate policies (or implemented no policies at all) to prevent this ongoing and increasingly worsening smuggling problem from occurring. (*See, e.g.*, *id.*, ¶¶ 44, 47); (*see also* Dkt. 9 at 2, 6-11).

---

[4] This is where drugs are sprayed onto paper (e.g., onto pages from books, letters, legal documents), allowed to dry (to conceal the drug), and then later smoked or otherwise ingested by the user.

[5] Calvillo does not specify whether these overdoses occurred in Cook County Jail (or any circumstances surrounding them). As this is a motion to dismiss, the Court draws these inferences in Calvillo's favor.

Calvillo also alleges that there was a widespread practice of cross-watching—which was a contributing and exacerbating factor to his injuries. *See supra* at 1-2; (Dkt. 1, ¶¶ 40, 54-56, 63(g)). He alleges that, because of this practice, after overdosing, he was not discovered for "several hours"—"if not days"—by department officers "who were supposed to be checking on him." (*Id.*, ¶ 29). He alleges that, after the overdose, "[h]e was unresponsive" and "had been left on the floor of his cell unattended for hours [or] days." (*Id.*, ¶ 36). "[H]is medical emergency went unnoticed . . . because [Defendants] were engaging in 'cross-checking'" and so there "was insufficient staff to monitor detainees and conduct wellness checks in a timely manner," he claims. (*Id.*, ¶ 40). This delay in receiving medical attention after his overdose caused injuries, including a six-month stay in the hospital, "neurological damage," and "paralysis," he alleges. (*Id.*, ¶ 32).

Dart contends that these allegations are insufficient to plausibly plead a widespread practice, fixating on the low number of the overdose deaths. (Dkt. 7 at 9-10); (Dkt. 10 at 2-6). Dart asserts that "to properly state a *Monell* claim based on widespread practice, a plaintiff must allege more than his own single occurrence." (Dkt. 10 at 3). Calvillo's allegations concerning the fourteen prior incidents are too few and far between, Dart asserts, because "widespread practice claims cannot rest on a handful of incidents but must reflect conduct so pervasive and 'so persistent and widespread as to practically have the force of law.'" (*Id.*) (quoting *Bridges v. Dart*, 950 F.3d 476, 479-81 (7th Cir. 2020)). Thus, Calvillo "has failed to plead any facts that would establish a widespread failure to implement appropriate policies, or how that was the moving force behind Plaintiff's overdose," Dart argues. (Dkt. 7 at 10).

"At the pleading stage . . . a plaintiff pursuing [the widespread custom or practice] theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017)

8

(citing *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011)); *Iqbal*, 556 U.S. at 683. Calvillo's claims satisfy the pleading requirements. *Id.* He plausibly alleges that the guards smuggled drugs into the jail because they were not screened by machines that would detect the drugs and he alleges that, because of the practice of cross-watching, his medical emergency went unnoticed for hours or days, causing serious injuries. *See supra* at 1-2, 7-8.

None of the cases Dart cite compel a different result from the Court. Unlike in *Jordan v. Klamenrus*, Calvillo did not "merely recite[] the elements of a *Monell* claim in conclusory fashion." 2020 WL 4547879, at *5 (N.D. Ill. Aug. 6, 2020); (*see* Dkt. 7 at 9; Dkt. 10 at 3-4). Dart's reliance on *Bridges v. Dart*, for the proposition that Calvillo's allegations fail to plausibly allege a high enough *count* of incidents to show a widespread practice is likewise misplaced. 950 F.3d 476, 478 (7th Cir. 2020); (*see* Dkt. 7 at 9; Dkt. 10 at 3-4). There is no "bright-line rule[] defining 'widespread custom or practice[.]'" *Id.* at 479. This quantitative comparison fixates on the wrong issue. Calvillo supported his allegations by pointing to the *felt effect*—the deaths caused by the overdoses. *Supra* at 1-2, 7-8. The number of issues arising from the alleged widespread practice is not dispositive of the practice itself. Rather, Dart ignores Calvillo's core allegation that, under Dart's watch, there was a widespread practice permitting guards to enter Cook County Jail without being sufficiently searched for drugs. *Id.*

To be sure Calvillo's allegations are not a model of clarity, but they do form a plausible "inference that the practice is so widespread so as to constitute a governmental custom." *Gill*, 850 F.3d at 344. "What is needed is evidence that there is a true municipal . . . policy at issue, not a random event." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). Calvillo has alleged just that—a municipal policy permitting guards to enter the prison without

sufficient screening to stop smuggling. This is far from a "random event." *Id.*[6] No more is required at the pleading stage. *Gill*, 850 F.3d at 344. The Court need not address Dart's arguments concerning prongs one or three because the Court finds that Calvillo has sufficiently alleged prong two: a widespread practice. *See Sanders*, 153 F.4th at 570.

### b. Causation

Dart asserts that Calvillo's allegations fail to show causation. (Dkt. 7 at 6-7, 9-10); (Dkt. 10 at 4-6). Because Calvillo "chose to take the drugs," Dart contends that Calvillo "was the moving force behind his overdose." (Dkt. 10 at 6). Dart argues that Calvillo "acknowledges policies existed to prevent drugs getting into the jail, and if drugs nevertheless got into CCDOC it was not because of those polices, but despite them." (*Id.*)

"These arguments quibble with red herring factual details and fail to address [Calvillo's] overarching allegations—that inmate overdoses regularly occur, Dart and Jail staff know that, the Jail's policies (if they exist) do not adequately address the problem, Jail staff are not appropriately trained or supervised as to drug screening or overdose treatment, and because of all that, [Calvillo] overdosed[.]" *Turner v. Cook Cnty. Sheriff's Off. by & through Dart*, 2020 WL 1166186, at *4 (N.D. Ill. Mar. 11, 2020) (denying motion to dismiss on substantially similar grounds and arguments). Again, while discovery may vindicate Dart's arguments, which may gain traction on summary judgment, they fail at the pleading stage. *Id.* The alleged municipal action or inaction that was the moving force behind the federal-rights violation is the alleged practice permitting officers to enter the prison without being searched (or sufficiently searched) thereby allowing them

---

[6] Moreover, the Court in *Bridges* was reviewing the District Court's grant of summary judgment under Rule 56—not the sufficiency of allegations under Rule 12. *Compare with Gill*, 850 F.3d at 344 (explaining pleading standard).

to smuggle drugs in. *See supra* at 1-2, 7-8. This set in motion the series of events that caused Calvillo's alleged injuries. *Id.*

Dart's contention that no liability can be imputed to him because—even if drugs were smuggled into the jail—it was Calvillo that chose to take them, is unavailing. Calvillo was a known drug addict. Dart therefore owed Calvillo a duty to protect Calvillo from *himself*. Like Dart's duty to protect inmates from self-harm or suicide (*Est. of Wallmow v. Oneida Cnty.*, 99 F.4th 385, 392 (7th Cir. 2024)), known violent inmates (*Smith v. Sangamon Cnty. Sheriff's Dep't*, 715 F.3d 188, 191 (7th Cir. 2013)), or assault on the basis of vulnerable carceral classes (*Wright v. Miller*, 561 F. App'x 551, 555 (7th Cir. 2014)), Dart owed Calvillo a duty to protect Calvillo from overdosing. *See Turner*, 2020 WL 1166186, at *5 (denying motion to dismiss *Monell* claims against Dart based on allegations of "specific failures by Dart to institute adequate policies for inmate supervision, screening, monitoring, and treatment related to drug smuggling, addiction, and overdose"); (*see also* Dkt. 1, ¶¶ 14, 15, 18, 19, 21, 22, 26, 27, 28, 41, 42, 49) (Calvillo alleging failure to protect because he was a known drug addict; Dart's knowledge of drug smuggling; and Dart taking inadequate steps despite this knowledge); *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022). At bottom, while it was Calvillo who took the drugs, it was Dart who owed a duty to stop just that from happening. *Id.*

### III.    State Law Claim

Dart contends that Calvillo's claim is time-barred. (Dkt. 7 at 4); (Dkt. 10 at 8-10). He maintains that Calvillo's claim "accrued on August 8, 2024," and so it "must be dismissed with prejudice because it is barred by the one-year statute of limitations for claims under Illinois law[.]" (*Id.*) (citing 745 ILCS 10/8-101). Calvillo counters that his claim is "tolled by 735 ILCS § 5/13-211" because he "was in a coma up and until at least October 22, 2024," and was not released from

11

the hospital until February 25, 2025. (Dkt. 9 at 11-12). Calvillo states that February 25, 2025, is therefore the date his accrual clock starts because he "was under a legal disability from the time the cause of action accrued on August 8, 2024, until he was released . . . on February 25, 2025." (*Id.* at 12). Dart replies that these "untimely new allegations" are insufficient because Calvillo "could have filed the complaint at any time after [February 25, 2025] and definitely by August 8, 2025, but . . . did not do so until September 24, 2025." (Dkt. 10 at 8). Moreover, Dart claims that "inability to pursue legal relief does not transform that inability into a legal disability." (*Id.* at 9) (citing *Parks v. Kownacki*, 193 Ill. 2d 164, 179 (2000)). Dart also argues that Calvillo's position is "undercut by the fact that [he] entered [a] guilty plea on June 24, 2025, in Cook County Circuit court case # 23CR0611701" and so if he were able to enter a guilty plea in June, he could—and should—have filed his complaint by August. (*Id.* at 9).

"[I]t is appropriate to dismiss a complaint for failure to state a claim based on the affirmative defense of untimeliness only 'when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations.'" *Chowaniec v. City of Chicago*, 2023 WL 4234398, at *2 (7th Cir. June 28, 2023) (quoting *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011)). As the statute of limitations is an affirmative defense, Calvillo's complaint "need not anticipate or overcome" it. *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). Rather, dismissal based on an affirmative defense is only appropriate "when the plaintiff effectively pleads [himself] out of court by alleging facts that are sufficient to establish the defense." *Id.*

"When a potential plaintiff has a legal disability, the statute of limitations is tolled until the plaintiff is no longer disabled." *Parks*, 193 Ill. 2d at 178 (citing 735 ILCS 5/13–211). "A 'person under legal disability' is defined as a person who has some disability or incapacity that prevents [him] from being fully able to manage his . . . person or estate.'" *Id.* (quoting 5 ILCS 70/1.06).

12

"Although a person need not be adjudicated disabled to have a legal disability . . . []he must have some argument that [his] disability is one contemplated by the legislature[.]" *Id.*

Calvillo has not pled himself out of Court nor was he required to affirmatively overcome statute of limitations arguments in his complaint. *Chowaniec*, 2023 WL 4234398, at \*2; *Hollander*, 457 F.3d at 691. Dart's contention that Calvillo's response amounts to "untimely new allegations" is unfounded. *See Bondick v. Ricoh Imaging Americas Corp.*, 2022 WL 2116664, at \*5 (N.D. Ill. June 13, 2022) (explaining that a party cannot allege new allegations in response to a motion to dismiss). There are substantial open factual issues that make decision on this issue premature. For example, based on the current record, it remains an open question when Calvillo's claim accrued, if he was physically able to bring his claim—or if he was completely unconscious and in a coma— as well as the import (if any) of his guilty plea on the timeliness of his state law claim. Even putting these to the side, no dismissal can follow solely from the face of Calvillo's complaint. (*See* Dkt. 1). While discovery may later reveal that Calvillo's state law claim is time-barred, resolution of this issue is best left for a more fulsome record or summary judgment, not a motion to dismiss. *See Rokowsky v. Vericity, Inc.*, 632 F. Supp. 3d 797, 805 (N.D. Ill. 2022) ("A complaint is not required to anticipate and defeat a statute of limitations defense. . . . Dismissal for untimeliness under Rule 12(b)(6) is thus unusual, and only appropriate where the plaintiff pleads himself out of court by 'alleging facts sufficient to establish a statute of limitations defense.' . . . Otherwise, questions of timeliness are generally more properly considered at the summary judgment or trial stage.") (brackets omitted) (quoting *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015)); *see also Clark v. City of Braidwood*, 318 F.3d 764, 767-68 (7th Cir. 2003) (reversing dismissal for untimeliness because the relevant question at the Rule

13

12(b)(6) stage is "only whether there is *any* set of facts that if proven would establish a defense to the statute of limitations").

## CONCLUSION

The Court grants and denies Defendant Dart's motion to dismiss in part. (Dkt. 7). The Court grants Dart's motion to dismiss Defendants County of Cook, Cook County Department of Corrections, and Cook County Sheriff's Office. (*Id.*) The Court denies the remainder of Defendant Dart's motion to dismiss. (*Id.*) The Court dismisses Defendant Jones and the Unknown Deputy Cook County Sheriffs for failure of service. Fed. R. Civ. P. 4(m).

_____
Virginia M. Kendall
United States District Judge

Date: April 7, 2026

14